**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC LYONS,** | : | **Civil No. 1:13-CV-2952** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Oftentimes in life, and in litigation, timing is everything.  Timing can be an essential component of litigative success because the procedural posture of a case often defines the results that can be expected in a lawsuit.  We are reminded of this simple truth as we consider the preliminary motion to dismiss filed by the defendants in this case.

This is a lawsuit filed by Eric Lyons, an inmate in the custody of the Pennsylvania Department of Corrections, currently incarcerated at the State Correctional Institution at Dallas.  Lyons is a frequent litigant in this Court, who has in numerous previous cases alleged a wide range of perceived misconduct on the part of prison officials and corrections officers, particularly regarding his long-term

placement in segregated housing and the attendant denial of various privileges that Lyons desires.  In this case, Lyons has brought similar claims against a number of Department of Corrections (DOC) officials and prison staff, alleging misconduct, retaliation, discrimination, and due process violations stemming from Lyons's placement in the Restricted Housing Unit (RHU) at SCI-Dallas, and his designation in Administrative Custody (AC) on the Restricted Release List (RRL) during 2012 and 2013.

Lyons challenges his continued placement in the RHU, and his designation on AC and the RRL, and contends that the conditions of his confinement violate a host of constitutional rights.  He also claims that a number of defendants have violated his civil rights by depriving him of certain personal property that he claims to own, including a television, radio and typewriter, and he claims that the defendants have retaliated against him unlawfully for filing grievances and one or more prior federal lawsuits.  Lyons is proceeding *in forma pauperis* (IFP), and the Court previously dismissed Lyons's claims against the former Secretary of the Pennsylvania Department of Corrections, Jeffrey Beard.  (Doc. 8.)  The Court also previously denied the defendants' motion to revoke Lyons's IFP status, without prejudice to their right to once again seek this relief upon a more developed record.  (Doc. 31.)

The remaining defendants[1] in this action have now moved to dismiss Lyons's claims in part, pursuant to Rule 12(b)(6).  (Doc. 26.)  In the motion, the defendants seek specifically to dismiss the following claims:

- Lyons's claim that the defendants' treatment of him, and his custody status and attendant deprivation of property, violated his right to Equal Protection under the Fourteenth Amendment, under a so-called "class of one" theory;

- Lyons's claims that the defendants failed to respond to grievances that he filed;

- Lyons's claims regarding alleged deprivation of his personal property;

- Lyons's claims against certain defendants who are not alleged to have been personally involved in the claimed violations; and

- "most" of Lyons's retaliation claims.

(Doc. 33, at 2.)  Lyons has responded to the motion, defending the sufficiency of his factual allegations and the legal theories supporting these claims, and also conceding the dismissal of certain defendants who were named erroneously in this case.  The moving defendants have declined to file a reply brief in further support of their

---

[1] The moving defendants include John Wetzel, the Secretary of the Pennsylvania Department of Corrections; Michael Klopotoski; Jerome Walsh, the Superintendent of SCI-Dallas; Joseph Kazarauskas; Norman Demming, the Deputy Superintendent for Centralized Services at SCI-Dallas; Sergeant Gandy; Corrections Officer Maye; Lieutenant Daniel Mosier; Captain Pall; and Michael Damore, the DOC Staff Assistant for the Eastern Region.  These defendants shall be referred to collectively as the "defendants" in this report and recommendation.

motion, which is now ripe for adjudication.  For the reasons that follow, it will be recommended that the motion be granted in part and denied in part.

## II.  <u>BACKGROUND</u>

Lyons alleges that he has been held in solitary confinement, on AC status, and placed in an RHU, since he was taken into custody at SCI-Camp Hill in 2003.[2] (Compl. ¶ 1.) He claims that his placement into restricted custody and his designation on the RRL was not the result of institutional misconduct, but instead was because of the nature of Lyons's crime of violence against a young child, and to "deprive [him] the liberties of interacting with other inmates in general population or accessing items of [his] personal property and privileges as other prisoners." (<u>Id.</u> ¶ 2.)  Lyons claims that his custody has remained restricted throughout his incarceration, and that it became permanently so as of May 14, 2008, when the Department of Corrections instituted an RRL to be applied to those inmates deemed to pose a threat to the secure operation of a correctional facility, and where a transfer of that inmate to another

---

[2] Lyons is currently serving a lengthy sentence that was imposed following his "2002 conviction for the kidnaping, rape and attempted murder of an 8 year-old girl." <u>Lyons v. Beard</u>, 3:07-2278, 2011 U.S. Dist. LEXIS 55189, 2011 WL 2036505 (M.D. Pa. Feb. 11, 2011), <u>report and recommendation adopted</u>, 3:07-CV-2278, 2011 U.S. Dist LEXIS 55183, 2011 WL 2015511 (M.D. Pa. May 24, 2011), <u>aff'd sub nom.</u>, <u>Lyons v. Sec'y of Dept. of Corr.</u>, 445 F. App'x 461 (3d Cir. 2011).

institution would not alleviate the security concern that gave rise to the placement.[3] (Id. ¶ 4.)

Lyons claims that in or around the time that Defendant Wetzel assumed his duties as Secretary of the Department of Corrections, he did away with a number of restrictions that had been placed on RRL inmates, and provided these inmates with "some expectation" that they could earn the possession and use of their personal property, including phone calls, televisions, radios, and typewriters, and that they might also be able to earn release into general population. (Id. ¶¶ 18-20.) According to Lyons, although staff at other DOC facilities began providing these privileges to RRL inmates, defendants Walsh, Demming, Mooney, and others were "against" applying these procedures at SCI-Dallas, where Lyons was transferred in or around September 30, 2011. (Id. ¶ 22-23.) Lyons claims he arrived at SCI-Dallas with some period of disciplinary custody left to be served for some unspecified misconduct, but when this time expired, he was nevertheless kept on both AC and RRL status, and continued to be deprived of his personal property, despite his requests to numerous

---

[3] Lyons's complaint includes a number of allegations charging former Secretary Jeffrey Beard of violating procedural rules governing the placement of inmates on RRLs, but these claims have been dismissed and are not repeated here.

individuals that these asserted rights be restored to him.[4]  (Id. ¶¶ 24-35.)  Lyons filed

requests, letters, and finally formal grievances in an effort to secure his television and

other property, but he claims that these requests and grievances were intercepted,

ignored or otherwise denied, perhaps as part of a concerted effort by prison officials

to deprive Lyons of any measure of due process.  (Id. ¶¶ 35-40.)

Lyons also recites discrete portions of his extensive litigation history,

observing that he had filed either a grievance or a prior lawsuit against one or more

of the defendants in 2012, asserting his view that the "conditions of confinement

imposed atypical and significant hardship on [him] in relation to the ordinary

incidents of prison life; that it denied [him] procedural and substantive due process;

that it biasly [sic] deprived [him] of [his] stored property contrary to similarly situated

inmates; that it denied [him] equal protection of the law; and that [he] was retaliated

against for exercising use of the grievance system."  (Id. ¶ 42.)  Despite receiving no

responses to his repeated requests and assertions, Lyons persisted in providing

---

[4] Much of this dispute seems to have been between Lyons and staff over his
desire to have a television in his cell, which he proposed to outfit with a digital
antenna made of "unbreakable plastic," (Compl. ¶ 30), which Lyons hoped to use
in order to "receive over-the-air stations." (Id.)  Lyons claims officials denied his
request, citing a lack of cable in the cell, and because they believed that Lyons
would be unable to receive any stations using his antenna.  Lyons's "firm position
was that [he] was not even being given the opportunity to try to get stations with
the antenna . . . ." (Id. ¶ 34.)  Thus, much of this lawsuit seems to be inspired by
Lyons's frustrated desire to watch television.

"proposal[s]" to Secretary Wetzel, who in turn never saw these proposals because they were intercepted and discarded by other DOC staff, including defendant Damore. (Id. ¶¶ 46-50.)

Lyons claims that in August 2012, he spoke with defendant Klopotoski, and again requested access to his television set as other RRL inmates had been provided once they satisfied certain criteria. (Id. ¶ 52.) According to Lyons, Klopotoski responded that he was aware of a pending lawsuit that Lyons had filed against him, and that he did not "see that as being acceptable behavior," and told Lyons he would not have his property "for a long time to come" because of the lawsuit. (Id. ¶¶ 53-55.)

In July 2013, Lyons had occasion to speak with Wetzel, Klopotoski, Walsh and others during a tour at SCI-Dallas. Lyons claims that during this time Wetzel claimed to have no knowledge of Lyons or his custody status, and said that he had never received any correspondence from him. Lyons claims that during this meeting, Wetzel asked Walsh if he would approve of Lyons being removed from the RRL and placed in general population, and Walsh said he did not have any objection. This inspired Wetzel to instruct Walsh to give Lyons his television if he complied with DOC policies and procedures. (Id. 56-69.)

Lyons claims that afterward, on August 9, 2013, Walsh summoned Lyons to a meeting where he "suggested that [Lyons] seriously think about what Klopotoski

had said to [him] about [his] tv on 8-31-12" – which Lyons interpreted to mean that if he wanted his television, he needed to drop his lawsuit.  (Id. ¶¶ 70-76.)  Lyons apparently did seek to have a lawsuit dismissed without prejudice. Once this occurred, he informed Walsh, and on September 5, 2013, Lyons was provided his television which, "contrary to the previous conjectures and assumptions" made by the defendants, Lyons "was able to get 19 over-the-air channels with [his] digital antenna." (Id. ¶¶ 77-79.)

Following the restoration of his television privileges, Lyons found himself embroiled in another dispute with his jailers, this time over the sequestration of some of his funds earned from a prison job, which was allegedly used to pay down institutional debts that Lyons had incurred.  As part of this dispute, Lyons wrote to Wetzel, essentially seeking to quit his job in order "to seek resolution from a legal standpoint," but this letter was intercepted by defendant Damore, who allegedly threatened Lyons by saying "it would be a shame for you to lose [your TV, radio, phone calls, etc.] due to reverting back to old behaviors which have not worked for you in the past." (Id. ¶ 80.)  Lyons interpreted this as a renewed threat that he would be retaliated against if he quit his job and sought to bring new lawsuits against prison officials.  (Id. ¶ 81.)

Notwithstanding this incident and Damore's alleged threat, Lyons did quit his job, and was once again deprived of his television and his radio "as a result of bogus misconducts received after [he] filed grievances against staff for assault, destruction of [his] property and retaliation for using the grievance system." (Id. ¶ 82.) Lyons claims that this lawsuit is now the only remedy available to him to resolve what he perceives as longstanding and pervasive constitutional deprivations.

Lyons asserts that his long-term isolation in administrative custody, and on the RRL within the SHU at SCI-Dallas constitutes an atypical and significant hardship that amounts to a violation of substantive and procedural due process, as well as violations of his right to equal protection and to be free from retaliation for exercising protected First Amendment activity. Lyons also claims that Wetzel has failed to follow DOC policies and procedures and has been deliberately indifferent to Lyons's "rights and liberties." (Id. ¶ 84.) Lyons also claims that defendant Damore has retaliated against him by intercepting correspondence to defendants Wetzel and Klopotoski, and by threatening further deprivations if Lyons persisted in bringing litigation against DOC officials and prison staff. (Id. ¶ 85-87.) Lyons also brings an Equal Protection claim under a "class of one" theory, alleging that he is singularly being treated differently, and more harshly, than other inmates in the SHU, on AC and

the RRL.  Lyons seeks declaratory and injunctive relief to stop what he perceives as violations of DOC policies, and he seeks compensatory and punitive damages.

## III.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957) ).  The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. 544, 555.  This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action.  <u>Id.</u> at 556.  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Phillips v. County of Allegheny</u>,

515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

## IV.   <u>DISCUSSION</u>

### A.   **Equal Protection**

The defendants first move to dismiss Lyons's Equal Protection claim, arguing that he has failed to plead facts sufficient to prevail on such a claim under a "class of one" theory.  The Equal Protection Clause of the Fourteenth Amendment generally requires that similarly situated persons be treated alike.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  An equal protection claim may be brought by a "class of one," where a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam).  After reciting familiar language regarding what must be proven to succeed on an Equal Protection claim in general, the defendants simply argue generally that Lyons has not "sufficiently allege[d] how he was treated differently for purposeful discriminatory reasons." (Doc. 33, at 4.)  The defendants also contend that this very claim was previously dismissed in a prior lawsuit.  <u>See</u> <u>Lyons v. Wetzel</u>, Civil No. 1:12-CV-1357, 2012 U.S. Dist. LEXIS 129891, 2012 WL 4033682 (M.D. Pa. July 17, 2012).  The defendants do not squarely address Lyons's "class of one" claim.

12

Although this Court previously screened a civil rights lawsuit that Lyons had filed alleging substantially similar facts, and asserting similar legal claims, the undersigned did so by issuing a report and recommendation that recommended the dismissal of these claims *without prejudice* to Lyons filing an amended complaint. (No. 1:12-CV-1357, Doc. 7.)  This report and recommendation was subsequently adopted by the district court.  (Id., Doc. 13.)  Thereafter, Lyons filed an amended complaint against defendants Klopotoski, Lawrence Mahally, Vincent Mooney, Jerome Walsh, John Wetzel, Jeffrey Beard, and Norman Demming, alleging claims somewhat similar to those brought in the instant lawsuit, and predicated upon substantially similar factual allegations.  (Id., Doc. 15.)  Lyons then sought leave to file a second amended complaint or, in the alternative, to have the action dismissed without prejudice.  (Id., Docs. 45, 51.)  In a report and recommendation issued on August 27, 2013, the undersigned noted that the defendants had not opposed the motion, and thus it was recommended that the plaintiff be permitted to have the complaint dismissed pursuant to Rule 41 of the Federal Rules of Civil Procedure, and that such dismissal be without prejudice.  (Id., Doc. 52.)  The defendants did not object to this recommendation, and on September 12, 2013, the district court entered an order adopting the report in its entirety and dismissing Lyons's amended complaint without prejudice.  (Id., Doc. 54.)

As indicated in this procedural history, there was no prior decision on the merits with respect to Lyons's claims that emanated from his allege denial of television or property privileges, or his related claims of unlawful differential treatment as an RRL inmate. Moreover, Lyons's claims regarding the alleged denial of television privileges did not assert an equal protection violation under a "class of one" theory, as is alleged in this case; instead, Lyons had suggested that the deprivation of his television set constituted an Eighth Amendment violation – a contention we found wholly unsupported in the law. Lyons v. Wetzel, Civ. No. 1:12-CV-1357, 2012 U.S. Dist. LEXIS 129891, 2012 WL 4033682 (M.D. Pa. July 17, 2012). Thus, in the undersigned's initial report and recommendation that urged the dismissal of Lyons's complaint, the Court focused on Lyons's apparent claim that the denial of television privileges amounted to deliberate indifference, and it was recommended that the Court reject such claims because the law overwhelmingly holds that inmates such as Lyons have no constitutional right to watch television in their cells, and that such deprivation does not amount to cruel and unusual punishment under the Eighth Amendment. Id. As noted, this initial report and recommendation was adopted, and Lyons was permitted to amend his complaint, as he proceeded to do. The litigation was thereafter dismissed without prejudice, following Lyons' motion for such relief, which was unopposed by the defendants.

14

Having succeeded in having his prior action dismissed without prejudice, Lyons has now refashioned his claims to contend that the denial of his television and other property privileges violated his right to equal protection because these deprivations were focused on Lyons alone, whereas other similarly situated inmates had access to, or were able to earn, similar property privileges. The defendants have neither squarely responded to this allegation, nor to the facts that Lyons has alleged in support of this claim. Because the defendants have not addressed the merits of this claim in any way, and because their asserted basis for urging dismissal of this claim does not take into account the fact that Lyons's prior lawsuit alleged different legal claims and theories, which were in any event dismissed without prejudice to his right to refile, it is recommended that the defendants' motion to dismiss Lyons's Equal Protection claims be denied without prejudice to the defendants' right to seek dispositive relief by promptly filing a motion for summary judgment, or otherwise by addressing the claims actually brought in this case.

## B.     Failure to Respond

The defendants next argue that to the extent that Lyons is attempting to fashion a claim alleging that the defendants' failure to respond adequately or at all to his grievances and other correspondence, such claim should be dismissed because inmates do not have a constitutional right to prison grievance procedures. Although

this legal assertion is accurate, see Jones v. North Carolina Prisoners Labor Unions, 433 U.S. 119, 137-38 (1977), it does not actually address the claims that Lyons is bringing in this case as we understand them.  Lyons does not appear to be alleging that he had a constitutionally guaranteed right to have his grievances and letters reviewed; what he seems to be arguing is that there was a concerted effort by DOC and prison officials entirely to frustrate Lyons's efforts to complain about, and grieve, his property deprivation and custody status.  The complaint does not predicate stand-alone claims on this alleged misconduct, but instead recites these allegations to provide context and support for Lyons's claims that the defendants subjected him to retaliation, and persistently ignored his due process, equal protection, and retaliation claims, which are now brought in this litigation.  Thus, it does not appear that there are any substantive claims based upon an asserted failure to respond to grievances, and there is thus no "failure to respond" claim to be dismissed.  However, to the extent that Lyons is making a free-standing constitutional claim of a failure to respond, we agree that this claim fails as a matter of law and should be dismissed.

## C.    Property Deprivation Claims

Next, the defendants argue that Lyons's claims relating to the deprivation of his television and other personal property should be dismissed because inmates have no constitutionally guaranteed right to have televisions, radios, typewriters, or similar

personal articles in their prison cells while in custody.  Although there is no question but that Lyons's preoccupation with gaining access to his television, his desire to watch television in his cell, and his repeated run-ins with corrections officials over his television feature glaringly in this litigation, we do not understand Lyons to be making any claim that he has a constitutional right to watch television or to maintain unfettered possession of his television within his prison cell.  Instead, Lyons is claiming that the defendants deprived him of his television in contravention of their own policies and procedures, that they made a concerted effort to prevent any review of Lyons's request for a post-deprivation remedy, and that they did so in order to retaliate against him for exercising protected First Amendment conduct (e.g., lawsuits and litigation against prison officials).  Lyons thus claims that other similarly situated inmates were permitted to possess televisions, radios and typewriters, whereas he alone was not.  Lyons also claims that access to his television was predicated on his agreeing to discontinue litigation that he had previously filed against some of the defendants in this case; that when litigation was dropped, his television was returned to him; and when he resumed litigation activity, his television was once again removed as retaliation.

Lyons is thus focusing on the tug-of-war over his desire for his television and other property in order to support his retaliation and due process claims; he is not

making a freestanding claim that he has an absolute right to his television set, and his claims for relief set forth in paragraph 92 of the complaint do not specifically call for the uninterrupted and unencumbered restoration of Lyons's television privileges. Instead, he seeks declaratory and injunctive relief with respect to the due process to which he believes inmates on the RRL are entitled to challenge their segregated housing classification; to set aside a DOC policy that Lyons claims is invalid; to declare that the defendants wrongly deprived him access to his stored property while on the RRL, in contrast to other similarly situated inmates who allegedly had access to such property; and to challenge as unconstitutional his long-term placement in the RHU in conditions that he claims are unlawful.  (Compl., ¶ 92.)  Although the defendants may ultimately have meritorious defenses to these claims, we do not reach this issue since the defendants do not directly address this claim in their pleadings. Further, while we find that there is any basis or need for the Court to enter an order dismissing what we view as a non-existent claim relating to the deprivation of

property,[5] to the extent that Lyons is making such a free-standing claim we agree that it should be dismissed.

### D.   Dismissal for Lack of Personal Involvement

The defendants argue that the complaint should be dismissed as to defendants Kazarauskas, Gandy, Maye, Mosier, and Pall, who are identified in the caption of the complaint, but are never alleged to have been involved in any of the conduct alleged in the body of the complaint.  Lyons has conceded that these defendants were named by mistake, and he has concurred in their dismissal at this time, without prejudice in the event he is later able to allege facts tying them to the claims in this case.  This cursory style of pleading is plainly inadequate to state a claim against a prison

---

[5] In his brief in opposition to the defendants' motion to dismiss, Lyons does seem at times to suggest that he is challenging the due process available to him with respect to his property, and that his continued placement on the RRL and within the RHU has been done, at least in part, to prevent him from gaining access to his television and other property, which he would otherwise be entitled to in general population.  Regardless of Lyons's arguments in his brief that may hint at his belief that he has a right to his television under DOC policies, we nevertheless do not perceive a standalone claim calling for the restoration of Lyons's personal property, and instead find that what he has alleged is a pattern of conduct by prison officials that has deprived him of due process and equal protection, and which has been done in a retaliatory manner, that had the effect of depriving him of his television and other items.  To the extent Lyons believes that we have mischaracterized his pleading, or the scope of relief sought in this case, he of course may object to this report and recommendation, or he may seek leave to amend his complaint, at which time any such amended claims could be responded to and addressed.

supervisor and compels dismissal of these defendants.    Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)  Therefore, it will be recommended that these defendants be dismissed without prejudice.

The defendants also argue that the claims against defendants Wetzel and Walsh should be dismissed for lack of personal involvement in the unconstitutional conduct alleged in this case.  The defendants maintain that although Wetzel may have been involved in the decision to indefinitely retain Lyons on the RRL on AC in the RHU, he should nevertheless be dismissed because there are several intervening steps that must occur before he would actually make a decision regarding an inmate's placement.  In making this argument, the defendants urge the Court to take judicial notice of a written DOC policy providing for RRL placement and review by a Program Review Committee, and, therefore, to find that Lyons has impermissibly named Wetzel under a *respondeat superior* theory of liability by failing to plead sufficient facts about the involvement, or lack of involvement, by the PRC with respect to Lyons's custody placement and review.  The defendants make a similar argument with respect to defendant Walsh, the Superintendent at SCI-Dallas.

It is hornbook law that in order to be liable for a violation under 42 U.S.C. § 1983, a defendant must have had personal involvement in the conduct alleged.

20

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Thus, liability cannot be predicated solely on the operation of respondeat superior. Id. Instead, liability can only follow personal involvement by a defendant, and such personal involvement may "be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). See also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Applying these longstanding principles, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 U.S. Dist. LEXIS 2467, 2008 WL 144199, *21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006) (citing Rode, 845 F.2d at 1207).

Inmates also may not sustain a constitutional claim against prison supervisors based solely on assertions that officials failed to adequately investigate or respond to past grievances. As noted above, inmates do not have a constitutional right to a prison grievance system. Jones, 433 U.S. at 137-38. Consequently, dissatisfaction with a response to an inmate's grievances does not independently support a constitutional claim. Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); see also Cole v. Sobina, No. 04-99J, 2007 U.S. Dist. LEXIS 93322, 2007 WL 4460617, *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

For this reason, courts frequently find that inmates have failed to plead sufficient facts to support claims against prison supervisors, such as the Secretary of the Department of Corrections or individual Superintendents. See, e.g., Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) (finding that district court properly dismissed claims against the Secretary of the Department of Corrections and prison Superintendent who "were named only for their supervisory roles in the prison system"). Particularly where an inmate is predicating a claim against a supervisory official for failing to investigate or respond to grievances, courts have held that

summary dismissal is appropriate.  See Paluch v. Sec'y Pennsylvania Dep't of Corr.,
442 F. App'x 690, 695 (3d Cir. 2011).

Applying these principles to the instant case, we find that Lyons has not
sufficiently pleaded claims against defendant Wetzel. Indeed, as to Wetzel the
gravamen of the complaint, and the well-pleaded allegations of supervisory contact
between Lyons and this Wetzel, relate to July of 2013, Lyons had occasion to speak
with Wetzel, Klopotoski, Walsh and others during a tour at SCI-Dallas.  Lyons claims
that during this time Wetzel claimed to have no knowledge of Lyons or his custody
status, and said that he had never received any correspondence from him.  Lyons
claims that during this meeting, Wetzel asked Walsh if he would approve of Lyons
being removed from the RRL and placed in general population, and Walsh said he did
not have any objection.  This inspired Wetzel to instruct Walsh to give Lyons his
television if he complied with DOC policies and procedures, and Lyons says that for
a period of time beginning in September 2013, these privileges were restored to him..
 (Id. 56-69.)  In our view, this benign factual recital is insufficient to support a
supervisory liability claim that Wetzel, as the head of the Department of Corrections,
violated Lyons' rights.  Instead, this exchange seems to reflect that Wetzel was
unaware of Lyons' previous complaints, but addressed his July 2013 presenting
concern regarding his institutional privileges in a way that contributed to the

restoration of some privileges, albeit briefly.  Therefore, we recommend dismissal of defendant Wetzel from this action.

Mindful of these cases and the unavailability of *respondeat superior* liability in § 1983 actions, we nevertheless conclude that defendant Walsh should not be dismissed at this time, when our review is limited solely to the pleadings, as Lyons has alleged that this official was personally involved in the decisions regarding his placement, the decision to deprive him of personal property, an allegedly concerted effort by prison officials to ignore Lyons's efforts to secure administrative relief, and even in the alleged retaliation for his exercise of First Amendment activity.  Although the facts of this case ultimately may support the defendant's assertions regarding lack of personal involvement, the complaint as pled contains sufficient allegations of personal involvement by defendant Walsh to overcome a motion to dismiss the complaint.

In Lyons's prior lawsuit, we initially screened his claims against defendants Walsh and Klopotoski, and found the complaint wanting because it consisted of "little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim."  Lyons v. Wetzel, Civ. No. 1:12-CV-1357, 2012 U.S. Dist. LEXIS 129891, *26, 2012 WL 4033682 (M.D. Pa.

July 17, 2012).  In this case, however, we disagree that the defendants have shown that defendant Walsh must be dismissed at the pleading stage.  As currently drafted, the complaint does more than allege the mere disregard of grievances; instead, it includes allegations that this defendant was specifically and personally aware of Lyons's repeated and ongoing concerns, his litigation history and allegations of repeated instances of retaliation; and that he communicated personally with Lyons about his placement, and was involved in the decisions that were made to continue Lyons's placement in segregation and to treat him in a singularly different, and more restrictive manner, than other similarly situated inmates.  Although it is a very close call, we believe that a fair reading of the complaint, accepting the allegations as true, warrants denial of defendant Walsh's motion at this time.

Moreover, the defendants have offered little more than a rote recitation of the legal standards governing *respondeat superior* liability in civil rights cases, and have further asked the Court to take judicial notice of prison policies, apparently in an effort to invite the Court to make a legal judgment at this time that Walsh could not, as a practical matter, have had the involvement that Lyons claims.  We believe that taking judicial notice in this way would be inappropriate, since it would require the Court to presume that the defendants adhered to such policies even though Lyons has alleged that the defendants routinely disregarded their own policies and procedures,

and defendants have not otherwise supported this request for judicial notice in a persuasive manner.  Thus, out of an abundance of caution, it will be recommended that defendant Walsh not be dismissed from the litigation at this stage, without prejudice to the defendants again seeking such relief through a properly supported motion for summary judgment if warranted.

### E.    Retaliation

Lastly, the defendants argue that "most" of the retaliation claims alleged in the complaint should be dismissed.

In order to state a claim for First Amendment retaliation in the prison context, an inmate must show (1) that he engaged in constitutionally protected conduct, (2) that he suffered adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must show that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241

F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody,

Allah, 229 F.3d at 225.

The third element to a retaliation claim is that the inmate-plaintiff show a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third component, Lyons must make an exacting showing:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well

27

aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 U.S. Dist. LEXIS 20044, 2006 WL 1000032, at *4 (M.D. Pa. Apr. 4, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard

> Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Twp., No. 06-2245, 2009 U.S. Dist. LEXIS 36256, 2009 WL 1227950, *3 (M.D. Pa. April 30, 2009).

The defendants in this case concede that Lyons has engaged in constitutionally protected conduct through the filing of grievances and civil actions. They dispute, however, that Lyons will be able to "prove" a causal link because, in at least one instance, Lyons filed a grievance against one individual and a civil action against others, but claims that retaliation was carried out by still another party. (Doc. 33, at 7.) The defendants support this argument by citing to decisions that found, at *summary judgment*, that a plaintiff could not demonstrate such a causal connection. (Id.) We do not find that these decisions compel the conclusion at the *pleading* stage that Lyons will absolutely be incapable of proving a causal connection between

retaliatory conduct taken by one or more prison officials, where protected activity involved other officials, particularly where Lyons has alleged a concerted pattern of activity by the remaining defendants.  The cited cases do not compel judgment in favor of the defendants at this time, and the facts alleged in the complaint are sufficient to permit Lyons to assert the retaliation claims as pleaded.

The defendants also insist that Lyons will be unable to prove a causal connection between his protected activity and ensuing retaliation because a span of months may have elapsed between certain protected conduct and a later allegedly retaliatory response.  However, the complaint alleges a direct connection between the defendants' decision to deny Lyons access to or use of his property and his engaging in protected activity, and indeed Lyons alleges that his ability to access his property was specifically conditioned on his agreeing to discontinue filing grievances and lawsuits.  Lyons even claims that after he had his prior action dismissed, his property rights were temporarily restored, before his property was subsequently confiscated once again after Lyons engaged in new protected activity.  Lyons thus alleges a causal relation that is based on more than a temporal connection, and has alleged that the defendants specifically advised or suggested that his treatment by prison officials was related to, and motivated by, his litigation activity.  Accepting these allegations as true at this time, it would be premature to foreclose Lyons's retaliation claims on a

motion to dismiss, and further consideration of the legal merits of this claim should await a properly supported motion for summary judgment if the defendants believe, at that time, that the evidence is insufficient to support Lyons' retaliation claims.

## V.   **RECOMMENDATION**

Accordingly, for the foregoing reasons, it is hereby recommended that the defendants' motion to dismiss (Doc. 26.) be GRANTED with respect to all claims brought against defendants Wetzel, Kazarauskas, Gandy, Maye, Mosier, and Pall. While we do not construe Lyons' current complaint as making free-standing claims of failure to respond or property deprivation, to the extent that Lyons is making such claims, IT IS FURTHER RECOMMENDED that those claims be DISMISSED.  In all other respects, IT IS RECOMMENDED that the motion to dismiss be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of February, 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge