IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC LYONS, | : | Civil No. 1:13-CV-2952 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| JOHN WETZEL, et al., | : | |
| | : | |
| Defendants | : | |

MEMORANDUM OPINION AND ORDER

I.    Factual Background

This is a lawsuit filed by Eric Lyons, an inmate in the custody of the Pennsylvania Department of Corrections, currently incarcerated at the State Correctional Institution at Dallas.  In this case, Lyons has brought claims against a number of Department of Corrections (DOC) officials and prison staff, alleging misconduct, retaliation, discrimination, and due process violations stemming from Lyons's placement in the Restricted Housing Unit (RHU) at SCI-Dallas, and his designation in Administrative Custody (AC) on the Restricted Release List (RRL) during 2012 and 2013.

Lyons challenges his continued placement in the RHU, and his designation on AC and the RRL, and contends that the conditions of his confinement violate a host

of constitutional rights.  He also claims that a number of defendants have violated his civil rights by depriving him of certain personal property that he claims to own, including a television, radio and typewriter, and he claims that the defendants have retaliated against him unlawfully for filing grievances and one or more prior federal lawsuits.  Lyons is proceeding *in forma pauperis* (IFP), and the Court previously dismissed Lyons's claims against the former Secretary of the Pennsylvania Department of Corrections, Jeffrey Beard.  (Doc. 8.)  The Court also previously denied the defendants' motion to revoke Lyons's IFP status, without prejudice to their right to once again seek this relief upon a more developed record.  (Doc. 31.)

This case now comes before the Court for resolution of a motion to compel discovery, (Doc. 54.), filed by Lyons.  This motion seeks to compel further responses to 13 requests for production of documents propounded by Lyons.  Many of these discovery requests seek information which is temporally remote from the claims set forth in Lyons' complaint, which relates to matters occurring in 2012 and 2013.  For example, in these requests, Lyons seeks prison policies relating to his entry into the prison system, and his reception and classification.  (Doc. 59-8, ¶¶1 and 2.)  Lyons entered the state prison system in 2003, some twelve years ago, and approximately nine years prior to the events described in this lawsuit.  Similarly, seven other discovery demands made by Lyons relate to records concerning events which

occurred between 2003 and 2006, long before the events giving rise to this lawsuit. (Doc. 58-1, ¶¶4-10.)  In yet another instance, Lyons seeks documents which are publicly available on the Department of Corrections website the Corrections ethics manual.  (Doc. 58-1, ¶3.)  Lyons then requests, some categories of material relating to actions allegedly undertaken by the named defendants regarding his custodial status, but places no temporal limits on these requests.  (Doc. 58-1, ¶¶11-13.)

The defendants have filed a response in opposition to this discovery motion, and this matter is now ripe for resolution.  For the reasons set forth below, the motion will be denied, in part, and granted, in part, in that we will direct the defendants to ascertain whether there are relevant records relating to Requests for Production 11-13, for the relevant time period, 2012 to the present, and we will direct that those records be produced for *in camera* inspection by the Court.  In all other respects the motion will be denied.

## II.   Discussion

### A.   Discovery Standard of Review

Several basic guiding principles inform our resolution of the instant discovery dispute.  At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

(a) Motion for an Order Compelling Disclosure or Discovery

(1) In General.  On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure, which now provides that:

(1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment.  Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court."  DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974).  Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the

4

Court.  <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987).  Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion.  <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983).  This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters.  In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. <u>See</u> <u>Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.</u>, 174 F.R.D. 572, 585 (D.N.J.1997).  When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F.Supp. 501, 502 (E.D.Pa.1996)).  Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also</u> <u>Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles.  Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through

5

discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Furthermore, in a prison setting, inmate requests for information relating to security procedures can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a

governmental needs to confidentiality of certain data but recognizes that courts must

balance the confidentiality of governmental files against the rights of a civil rights

litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

With these legal guideposts in mind, we turn to consideration of these various

discovery requests.

### B.    Many of Lyons' Requests Are Too Temporally Remote

At the outset, we note that a gulf of many years separates Lyons' discovery

requests from the pertinent events in this lawsuit, which occurred in 2012 and 2013.

For example, in these requests, Lyons seeks prison policies relating to his entry into

the prison system, and his reception and classification.  (Doc. 59-8, ¶¶1 and 2.)

Lyons entered the state prison system in 2003, some twelve years ago, and approximately nine years prior to the events described in this lawsuit. Similarly, seven other discovery demands made by Lyons relate to records concerning events which occurred between 2003 and 2006, long before the events giving rise to this lawsuit. (Doc. 58-1, ¶¶4-10.)

Thus, in many instances, as much as a decade separates the events in this lawsuit from the discovery which Lyons seeks. This fact is particularly telling in an inmate retaliation lawsuit like the case brought here by Lyons since it is well settled that a retaliation claim requires proof of a causal link between the plaintiff's constitutionally protected activities, and the defendants' allegedly retaliatory actions. Furthermore, in order "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing. . . ." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Moreover, "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." Id. at 267-68. Given the lengthy span of years between the events that are the subject

of the current lawsuit, and the matters which are the subject of these discovery requests, we cannot find that discovery relating to the underlying details of that prior, dismissed case will "prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing. . . ." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Therefore, these requests will be denied.

Beyond their lack of relevance, there is another difficulty with many of these discovery requests. These requests also seek information which is private or privileged. In particular, the demand for disclosure of corrections staff vote sheets from 2003 through 2006 would be inappropriate since these documents are confidential DOC forms which contain the "yes or no" votes of corrections staff on sensitive issues. The vote sheet may also contain notes reflecting each staff member's individual, personal opinions regarding the inmate who is the subject of some contemplated action. Disclosure of vote sheets may subject the staff to retaliation by the inmate, and hinder the decision making processes. Recognizing this fact, courts have in the past declined inmate discovery demands that target disclosure of these forms. See Adams v. Hunsberger 2007 U.S. Dist. LEXIS 8062, 1-3 (W.D. Pa. Jan. 22, 2007) (denying a motion to compel production of a vote sheet).

Given these confidentiality considerations, and the fact that these temporally remote records do not appear relevant to Lyons' current claims, Lyons' motion to compel production of the documents identified in paragraphs 1, 2, 4-10 of his Requests for Production will be denied.

### C.   Lyons May Not Compel The Production of Public Records at Defendants' Expense

In other instances, Lyons seeks information such as ethics manuals and prison policies relating to his entry into the prison system, and his reception and classification, which are publicly available on the Department of Corrections website. (Doc. 59-8, ¶¶1, 2 and 3.)  As we understand it, the Department of Corrections does not object to Lyons obtaining these publicly available materials, but opposes any requirement that it underwrite the costs of this discovery by making copies of these records at its own expense for Lyons.  In this regard, we note that nothing in 28 U.S.C. § 1915 authorizes federal courts to finance or pay for a party's discovery expenses incurred while prosecuting a lawsuit, even if that party has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a).  Review of the case law reveals that numerous courts within and without the Third Circuit have recognized the limitations of federal courts to relieve indigent litigants from the costs of pre-trial discovery.  See, e.g., Brooks v. Quinn, 257 F.R.D. 515, 417 (D. Del. 2009)

("Although plaintiff is proceeding *in forma pauperis*, the court has no authority to finance or pay for a party's discovery expenses. . . . It is plaintiff's responsibility to pay for the costs associated with the taking of a deposition."); Augustin v. New Century TRS Holding, Inc., No. 08-326, 2008 U.S. Dist. LEXIS 96236, at *7-9 (W.D. Pa. Nov. 25, 2008) (denying plaintiff's IFP application to cover costs for discovery requests); Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (28 U.S.C. § 1915 does not require the government to advance funds for deposition expenses); Toliver v. Community Action Comm'n to Help the Econ., 613 F. Supp. 1070, 1072 (S.D.N.Y. 1985) (no clear statutory authority for the repayment of discovery costs for IFP plaintiff); Sturdevant v. Deer, 69 F.R.D. 17, 19 (E.D. Wis. 1975) (concluding that 28 U.S.C. § 1915 "does not extend to the cost of taking and transcribing a deposition."); Ebenhart v. Power, 309 F. Supp. 660, 661 (S.D.N.Y. 1969) ("Grave doubts exist as to whether [28 U.S.C. § 1915] authorizes this court to order the appropriation of Government funds in civil suits to aid private litigants in conducting pre-trial discovery."); see also Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant.").

11

Thus, as a general rule, the Court lacks the lawful authority to help finance, or relieve plaintiff from, the costs associated with taking pre-trial discovery. Accordingly, we will deny these discovery requests to the extent that they would require the defendants to bear the expense of making copies of otherwise available records for Lyons' use at trial.

> **D.** **The Defendants Shall Provide The Court For Its *In Camera* Inspection Any Records Responsive to Requests for Production 11-13, Which Were Prepared, or Existed, During the Relevant Time Frame of This Lawsuit, 2012 to the Present**

Finally, Lyons requests some categories of material relating to actions allegedly undertaken by the named defendants regarding his custodial status, but places no temporal limits on these requests. (Doc. 58-1, ¶¶11-13.) While we believe that the lack of any temporal limit on this request is overly broad, it may be that records relating to the time frame of this litigation, 2012 to the present may be relevant to the issues in this litigation. Recognizing that these prison records may contain arguably discoverable material, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v.

Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here.  We will direct the defendants to ascertain whether there are relevant records relating to Requests for Production 11-13, for the relevant time period, 2012 to the present, and we will direct that those records be produced for *in camera* inspection by the Court.  Armed with this information the Court can determine:  (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

## III.   Order

Accordingly, this 19th day of October 2015, it is ORDERED that the plaintiff's motion to compel, (Doc. 54.), is GRANTED, in part, and DENIED, in part, as follows:

First, Lyons' motion to compel production of the documents identified in paragraphs 1, 2, 4-10 of his Requests for Production of Documents is DENIED.

Second, with respect to the items identified in paragraphs 12 and 4 of Lyons' Request for Production of Documents, we DENY these discovery requests to the extent that they would require the defendants to bear the expense of making copies of otherwise available records for Lyons' use at trial.

Finally, on or before <u>November 16, 2015</u>, we direct  defendants to ascertain whether there are relevant records relating to Requests for Production 11-13, for the relevant time period, 2012 to the present, and we will direct that those records be produced for *in camera* inspection by the Court.  Armed with this information the Court can determine:  (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

*<u>S/Martin C. Carlson</u>*
United States Magistrate Judge